NEWTON M. WHITMAN *versus* ANDREW FREESE & *al.*

SAME *versus* SAME.

A mere description in a bill of sale of the articles sold as " certain lots of boards and dimension stuff now at and about the mills at P." does not amount to a warranty that the articles were merchantable.

It is not competent for a surveyor of lumber in the county of Penobscot, whose survey has been returned and recorded as provided in the statute regulating the survey of lumber in that county, to show by his testimony, that the lumber surveyed by him was of a different quality from that stated in his survey.

ASSUMPSIT on a note given by the defendants to F. & I. S. Whitman, dated April 26, 1839, for $283,00, payable in six months, and indorsed to the plaintiff. There was another suit between the same parties, brought afterwards on a note similar in all respects, save that it was made payable in eight months. They were both argued at the same time, as one case, on exceptions to the rulings and instructions of TENNEY J. presiding at the trials, and on motions to set aside the verdicts as against evidence.

The defendants in a brief statement, alleged that the notes were given for boards, bought within the county of Penobscot to be shipped beyond the limits of the county, and not surveyed according to the provisions of the statute regulating the survey of lumber in that county, and that there was a war-

ranty at the sale, that the boards were merchantable, when in fact they were not. It was agreed, that the actions should be subject to the same defence, as if F. & I. S. Whitman were the plaintiffs. The sale of the lumber was made by an agent, Dexter E. Wadleigh. The defendants introduced in evidence the bill of sale of the lumber, of which a copy follows.

" Messrs. Freese & Chadwick bought of F. & I. S. Whitman, Bangor, April 26, 1839, the following mentioned lots of lumber, viz. two lots, at the mouth of the Pushaw stream, boards, also certain lots of boards and dimension stuff now at and about the mills at Pushaw; being the same lots shown to Mr. Chadwick by Dexter E. Wadleigh in the presence of Warren Brown, April 25, 1839, estimated to be two hundred thousand, more or less; also, seven thousand of clapboards under the mill, also thirty thousand of laths, all for the sum of eight hundred and fifty dollars per agreement. Received payment in notes of four, six and eight months.

" F. & I. S. Whitman."

Among the witnesses called was one Oakes who testified, that he was a deputy surveyor of lumber in the county of Penobscot, and as such surveyed a quantity of this lumber, and made his return thereof, according to the provisions of the statute, to the Surveyor General, where it was recorded. He was inquired of respecting the quality of this lumber. The plaintiff objected to the admission of this testimony on the ground that there was better evidence in writing. The Judge rejected the testimony. The surveyor's books were then introduced, and the same witness was asked by the defendants, whether a large portion of the boards surveyed by him were not of a quality inferior to what appeared on the survey-book. The plaintiff objected, and the Judge ruled that the testimony was inadmissible, and that the surveyor could not contradict his own survey of those boards.

The objections made, at the trial, to the admission of Wadleigh and I. S. Whitman as witnesses, and the facts and rulings in relation thereto, are stated in the opinion of the Court.

The general instructions to the jury, appearing in the ex-

ceptions, relate exclusively to the question of fraud in the sale, one ground of defence set up at the trial. As no objections were made to their correctness in the argument, they are not given. The verdict was for the plaintiff, and the defendant filed exceptions.

*McCrillis* argued for the defendants. Under the motion for a new trial, it was contended, that the bill of sale was a mere bill of parcels, and that parol evidence was admissible to show a warranty ; and that the verdict was against evidence on that ground. The lumber sold was described in the bill of sale as boards, which amounts to a warranty, that they were such and of fair quality. 13 Mass. R. 139; 11 Pick. 97 ; 2 Pick. 214 ; 2 Rawle, 23 ; 12 Wend. 566.

There was an implied warranty in law, that the lumber was of a merchantable quality. The sellers were the manufacturers of the articles sold. 1 Stark. Ev. 384 ; 2 Kent, 483 ; 2 Hill. 606 ; 6 Taunt. 327 ; 5 Bingh. 533 ; 4 B. & Cr. 108.

It was also contended that the rulings of the Judge were erroneous, both in the admission and in the exclusion of the testimony.

*Cutting* argued for the plaintiff. He said no points of law were open to examination, but such as were made in the exceptions ; and contended that the rulings of the Judge, who presided at the trial, were correct in overruling the objections made on the part of the defendants to the admission of the plaintiff's witnesses, and in rejecting the introduction of parol evidence to contradict the survey made by the witness, which had been returned and recorded according to the provisions of the statute regulating the survey of lumber in this county.

He contended, however, that if new points of law could now be made, under a motion for a new trial, the positions taken for the defendants could not aid them. There is no warranty in the bill of sale ; and on the question of warranty, no parol evidence was admissible of what was said before or at the time of sale. Besides the defences of fraud and warranty cannot be set up together. They are inconsistent.

The opinion of the Court was drawn up by

TENNEY J. — The signatures on the notes in the two suits were not denied; but the defence was upon the ground, that they were obtained by fraudulent representations, and that thereby they were given for too large a sum. It is not perceived, that any of the general instructions to the jury were erroneous; and indeed the argument in support of the exceptions is not founded upon such a position; but that the plaintiff was not entitled to recover, because there was a warranty arising from the terms used in the bill of sale of the lumber from F. & I. S. Whitman to the defendants, and from the evidence in the case. The bill of sale, we think, will not admit of such a construction. The fair import of it is, that a quantity of lumber, not surveyed, was sold for a gross sum, there being no description of the kind or quality, or the precise amount. The word "boards" was used not to indicate that the lumber was merchantable, or that it was sold as such, but as a term applied to a particular species of lumber. There is nothing in the evidence, which required the legal instruction to the jury, that, if it was believed, the vendors of the lumber were holden to deliver merchantable boards.

Objections were made to the competency of I. S. Whitman and Dexter E. Wadleigh as witnesses for the plaintiff. They were both examined on their *voir dire*. Every person not a party to the suit is admissible, until his incompetency is made in some manner to appear; and we are to look at the whole of the statement made by a witness in this examination in determining the question; and Courts have endeavored to let the objection go to the credit, rather than to the competency of witnesses. *Bent* v. *Baker*, 3 T. R. 27.

Whitman stated that he had at the time of the trial no interest in the event of the suit, that he had transferred the notes some time previous and an allowance to him therefor for more than their amount was made by his creditor; and it appears that he was released by the plaintiff in the suit from all liability for costs. He is not a party of record, and a verdict in this case, cannot be evidence for or against him in a suit, in

which he may be a party, and his testimony was properly allowed.

Wadleigh once owned the lumber, which was the consideration of the notes, and it was put into the hands of F. & I. S. Whitman as collateral security for his indebtedness to them, before the sale to the defendants. The bargain was made by him, but his creditors sold the lumber, and took to themselves negotiable notes, and he expected they would give him credit therefor. The witness and the Whitmans had a reference, and he expected no further credit, and that he had no interest in the event of the suit. There is no suggestion made by him, that the makers of the notes were of doubtful ability to pay, and the facts, and the expectations of the witness were inconsistent with the idea, that the notes had not absolutely gone into the hands of his creditors; and that he either had credit for their amount, or was entitled thereto, we think is manifest. It is true, he stated that the notes were taken as collateral security, but we are satisfied, that when the whole is taken together, his meaning must have been, that they were to account to him on their claim for the same.

The testimony of John Oakes and Atherton Pratt was admitted, excepting so far as it had reference to the quality of the lumber, which they had surveyed, as surveyors appointed by authority of statute, and which was required to be made matter of record, and was in fact so made. These records were introduced, were the best evidence of the facts, and could not be controlled by parol testimony.

The question, whether the notes were obtained by fraudulent representations or not was one of fact, which was put to the jury and passed upon by them. The evidence as reported, we think will not authorize the Court to interfere in that, which it was their province to settle.

*Exceptions and motion for new trial overruled.*